In the Matter of the Application of A. WILSON INSLEY, Petitioner, against WILLIAM T. SHANAHAN, Superintendent of Craig Colony, and Others, Respondents.

Supreme Court, Livingston County, January 3, 1940.

*Austin W. Erwin,* for the petitioner.

*John J. Bennett, Jr., Attorney-General [Bernard L. Alderman, Assistant Attorney-General,* of counsel], for the respondents.

LAPHAM, J.   This is an application under article 78 of the Civil Practice Act which seeks a reinstatement of the petitioner as a registered nurse in the Craig Colony for Epileptics at Sonyea, N. Y.   The petitioner was dismissed from service by the superintendent on January 14, 1939, after the death of a patient at the colony.

The petition alleges that the petitioner had served as a registered nurse at Craig Colony in the non-competitive class of the civil service for a number of years prior to his dismissal.   On December 20, 1938, Merton Orr, a patient at the colony, received injuries which resulted in his death three days later, and, in the investigation which followed, the petitioner, as well as other attendants and nurses, were periodically questioned on circumstances surrounding the death of the patient.   On January 5, 1939, the superintendent suspended the petitioner from service pending the outcome of the investigation, and on January fourteenth, by letter, removed Mr. Insley from duty on the ground that in sworn statements he had admitted striking the patient in violation of the rules and regulations of the Department of Mental Hygiene.   In April, 1939, the petitioner was indicted for manslaughter as a result of the death of Orr, and on September 15, 1939, he was acquitted of that charge.   The petition alleges that Insley struck the patient only in self-defense and that his removal by the superintendent was illegal and in violation of section 22 of the Civil Service Law and subdivision 2 of section 34 of the Mental Hygiene Law, because he had received no notice of his proposed removal or a copy of the charge against him and had not been given a reasonable opportunity for answering these accusations in writing.

The answer of the respondents, beyond denying that the removal of the petitioner was illegal under the statutes, alleges in substance that the autopsy revealed that Merton Orr had six fractured ribs, that the lower lobe of his left lung was collapsed and that he had died of a hemorrhage and lung collapse caused by one of the six fractured ribs, and that the petitioner admitted that he had struck Orr in violation of the official rules governing the conduct of employees at the colony.   The answer contained a further defense that the petitioner has been guilty of laches in making this application and that the limitation of time prescribed by section 1286 of the Civil Practice Act is a bar to this proceeding.

The relief which the petitioner seeks must be refused because he has failed to make a timely assertion of his rights. Before the enactment of section 1286 of the Civil Practice Act, which prescribes a specific limitation of four months for a proceeding of this character, the courts had held with a striking unanimity that an unexcused delay of more than four months in seeking reinstatement after discharge from the public service was fatal to an application for an order of mandamus to compel such reinstatement. The limitation of four months for an order of certiorari was by analogy applied to a mandamus proceeding. (*Matter of Williams* v. *Pyrke*, 233 App. Div. 345; *Matter of Hartmann* v. *Tremaine*, 250 id. 188; *People ex rel. Connolly* v. *Board of Education*, 114 id. 1; *People ex rel. Finn* v. *Greene*, 87 id. 346; *People ex rel. Croft* v. *Keating*, 49 id. 123; *People ex rel. McDonald* v. *Lantry*, 48 id. 131.)

Section 1286, in so far as it applies to this application, provides that " A proceeding * * * to compel performance of a duty specifically enjoined by law, must be instituted * * * within four months * * * after the respondent's refusal, upon the demand of the petitioner or the person whom he represents, to perform his duty." A literal reading of the statute gives to an employee who has been dismissed from the public service the right to withhold making a demand for reinstatement for an indeterminate period and to move for an order to compel his reinstatement long after he has been discharged and at a time when the interests of others have crystallized into rights entitled to the protection of the law. Such a construction would frustrate the avowed intention of the Legislature in enacting article 78 of the Civil Practice Act to erase the division of remedies into writs and orders of certiorari to review, mandamus and prohibition, and to correlate and assimilate them into one general proceeding to be governed, subject to the nature of the relief sought, by a harmonious body of rules. Public policy and judicial symmetry alike require that the demand for the performance of a duty shall be timely. (*Matter of DeLack* v. *Greene*, 170 Misc. 309, 312.)

Here the petitioner was quiescent too long. Neither the petition nor the reply alleges a demand for reinstatement, and the refusal on the part of the respondents to comply. If the petitioner is relying on a demand and refusal, the petitioner should allege these essential facts in order to give the respondents an opportunity to meet this allegation in their answer and to raise, if necessary, an issue of fact on this point. The affidavit of the attorney for the petitioner, however, which is attached to the reply, shows that the petitioner took no positive action toward his reinstatement until his attorney asked Dr. Shanahan, the superintendent at the

colony, on September 15, 1939, whether he would restore the petitioner to his position if he were acquitted by the jury which was then deliberating on the charge of manslaughter brought against him. Dr. Shanahan made no commitment and promised to take the question under consideration. Approximately three weeks later the petitioner's attorney was informed by Steve Cooper, chief of police at Craig Colony, that the superintendent had refused to reinstate Insley. No formal demand in writing for his reinstatement was ever made by the petitioner.

From the time of his dismissal on January 14, 1939, until September 15, 1939, the petitioner did not move either to protest this action of the superintendent or to demand a restoration of his office on the ground that it had been unlawfully taken from him. The excuse which he offers for his inertia is that he stood in the shadow of an indictment for manslaughter and that he hoped to be reinstated if he were acquitted on the trial of the indictment. The excuse is unavailing. The legality of the petitioner's dismissal was not an issue in the trial of the indictment for manslaughter, and the result of the trial had no bearing on the right of the superintendent to dismiss the petitioner. If the right of the superintendent to discharge Insley had been the subject of a pending litigated proceeding under circumstances similar to those existing here and if the petitioner had deferred his demand until after a clear adjudication of his rights, his delay would have been condoned (*Matter of Uphoff* v. *Roberts*, 244 App. Div. 596), but there can be no such condonement where so wide a gulf separates the two proceedings. The hope for reinstatement which the petitioner entertained is equally fruitless. Whatever its other powers may be, a hope has no legal force unless it has passed into action. The petitioner chose to remain silent when vigilance and alertness were required from him. The choice was deliberate, uncolored and uninfluenced by any promise or suggestion of reinstatement on the part of the authorities.

A consideration of the merits of this proceeding leads to the same result. The petitioner contends that the court must shut its eyes to the events that lay behind the dismissal and cites *People ex rel. Brown* v. *O'Brien* (137 App. Div. 311) and *Matter of MacMillan* v. *Morgenthau* (146 Misc. 588) in support of his contention. These cases merely enunciate the rule that, if an employee is removed from public service by an official having the power of removal, the court will not inquire whether the charges against such employee should have been sustained, if the statutory requirements for the dismissal have been observed. But this is far from saying that the court may not, in a proper case, probe into the merits to determine whether the charges against an employee are substantial or trifling.

Merton Orr died as a result of severe injuries received in the ward at the colony under the supervision of the petitioner. A transcript of the statements made during the investigation by the petitioner and other attendants at the institution reveals suppression of truth, evasion, falsehoods and a slow and painful revelation of the actual facts. The petitioner admitted that he had struck Orr with his fists, that he had given a false explanation of the cause of Orr's injuries on the hospital records, and that he knew the striking was a violation of rules which would cost him his position. He justified the use of force as a measure of self-defense but the disparity in stature, size and condition between the petitioner and the patient and the admitted fact that the patient was faltering and stumbling under the weakening influence of four medications which had been previously administered to quiet him cast grave doubt on the truth of this explanation. In any event the conclusion is inescapable that the petitioner used excessive force in restraining the patient and that he was guilty of a flagrant breach of duty.

In view of the decision which I have reached, the contention of the petitioner that he was not legally removed under subdivision 2 of section 22 of the Civil Service Law requires no extended comment. The protection of the statutory safeguards of this law reached to the petitioner by virtue of the provision of subdivision 2 of section 34 of the Mental Hygiene Law. The superintendent in dismissing the petitioner failed to obey the express provisions of the statute which required him to give the employee notice of the proposed removal, to furnish him with a copy of the charges against him, and to afford him a reasonable chance to answer them in writing. But the purpose of the statute was fulfilled. The petitioner knew the nature of the accusations against him and had an opportunity to explain them in a hearing to which he was not expressly entitled by subdivision 2 of section 22 of the Civil Service Law. (*Matter of Singer* v. *Graves*, 254 App. Div. 37; affd., 279 N. Y. 573.)

The failure of the superintendent to obey the express mandate of the statute cannot, however, prevail in favor of the petitioner in the face of his inertia after his dismissal and the inexcusable use of excessive force on the patient. The Civil Service Law confers on such an employee a vested right in his position of which he cannot be deprived except in conformity with its provisions, but the statute gives no one a vested interest in an office which he cannot fill with either competency, dignity or humanity.

The application of the petitioner for an order to compel his reinstatement as registered nurse is denied.

Let order enter accordingly.