PEOPLE ex rel. WOOD v. DEPARTMENT OF HEALTH OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.  May 5, 1911.)

MUNICIPAL CORPORATIONS (§ 191*)—OFFICERS—REMOVAL.

The relator, who was a veteran volunteer fireman, and, under Civil Service Law (Consol. Laws 1909, c. 7) § 22, subject to removal only "for incompetency or misconduct, shown after a hearing upon stated charges," was served with charges by the board of health, under which he held the position of assistant registrar of records, and upon due hearing was found

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

guilty of grossly and indecently, by subterfuge and against her will, committing an outrageous assault upon a woman patient, under the pretense of treating her professionally, while engaged in his private practice, and removed from his office. Previous to this action of the board he had been indicted for rape, based upon the same assault, tried, and acquitted. *Held* that, under Penal Law (Consol. Laws 1909, c. 40) §§ 2010, 2013, the charge made by the board was distinct from the criminal charge on which relator was acquitted, and such acquittal was no bar to his removal from office.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 191.*]

Scott and Miller, JJ., dissenting.

Certiorari by the People of the State of New York, on the relation of John W. Wood, against the Department of Health of the City of New York, to review determination of respondent in removing relator as Assistant Registrar of Records in the Department of Health. Proceedings of the board of health affirmed, and writ of certiorari dismissed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

George M. Pinney, Jr., for relator.
John F. O'Brien, for respondent.

DOWLING, J. On December 17, 1910, the relator, who had been for nearly 13 years assistant registrar of records of the department of health of the city of New York, in and for the borough of Richmond, was served with charges involving such unprofessional conduct on his part towards his patients in his private practice as would, if true, have constituted misconduct showing him unfit to occupy any public position, and particularly one his retention in which would have furnished him with a certificate of professional character, rendering it possible for him to continue his course of taking undue and improper advantage of his private patients. Relator, being a volunteer fireman, was given the hearing to which he was entitled. Section 22, Civil Service Law. The charges related solely to his actions with patients in the practice of medicine, which he was pursuing outside of his official duties. If true, they established such a disregard of morality, decency, and professional ethics as constitutes convincing proof of misconduct, evidencing unfitness for the official position he occupied, or any other.

The board, by vote of two to one, found relator guilty on four charges, involving his actions with four different women. Without going into the revolting details of the evidence, it is enough to say that there was evidence before the board sufficient to justify its members, if they gave it credit, in reaching the conclusion which they did. It is not our function to substitute our conclusions on the facts for those of the board, but only to determine if in its action the board has observed the requirements of law safeguarding relator's rights, and if it has reached a conclusion which is not against the preponderance of evidence. This we believe it has done. If it believed the evidence

of the complaining witnesses, it is hard to see how it could have reached any other conclusion. That the charges referred, in part to transactions remote in time, was a consideration to be weighed by the board, and had to do with the credibility of the witnesses. But it is hard to conceive of any reason for women voluntarily subjecting themselves to the humiliation involved in such an exposure of past occurrences, unless they were telling the truth, nor is there any suggestion of a motive for their action. It may be quite true that one of the women had made known the existence of the other evidence. Assuming her testimony to be true, she had good reason for wishing to have relator punished for his unscrupulous abuse of the opportunities which the exercise of his profession had placed in his way.

It is objected that relator cannot now be punished for his assault upon Mrs. De Camera, as he was acquitted by the jury upon his trial for a rape committed upon her. But the charge preferred against him in these proceedings was that, under the pretense of treating her professionally, he grossly and indecently, by subterfuge, force, and against her will, committed an outrageous assault upon her. This charge is distinct from the criminal one, upon which he was acquitted. The elements of the two are different. The amount of proof required and the rules applicable thereto are not identical. An act might be sufficient to constitute an indecent assault, without constituting the statutory crime of rape (Penal Law, § 2010); and there could be no conviction of the crime without corroboration of the female defiled (section 2013). Nor is the fact that relator was acquitted upon the criminal charge an answer to these charges. People ex rel. Allen v. Welles, 14 Misc. Rep. 226, 35 N. Y. Supp. 672. In People ex rel. Connelly v. Board of Police, 11 Hun, 403, a police officer was held to have been properly dismissed from the force for having enticed a girl to a house of prostitution, although he had been discharged by a police magistrate after a hearing on the same charge in criminal proceedings; and the court said:

"We think it is within the power and it is the duty of the board of police to take notice of the conduct of members of the police force as well when off as when on duty, and to dismiss an officer who is guilty of criminal or immoral conduct when off duty as an unfit person to be a member of the force."

In People ex rel. Fitzpatrick v. French, 32 Hun, 112, the officer had been tried for larceny and acquitted after his dismissal from the police force, the ground of the charge against him being the acts constituting the alleged larceny; and the court held that the acquittal had nothing to do with any question before it, as—

"if it were entitled to be considered, it would simply establish that the relator's misconduct, for which he was removed, did not amount to the crime of larceny." 32 Hun, 115.

It was further said in the same case (32 Hun, 117):

"It is not well to confuse the powers of administrative or executive bodies to remove subordinates for any conduct showing unfitness for place or position with the proceedings of courts of justice to punish crimes. They are essentially different in their objects, and may and do exist and move in their respective spheres without collision or inconsistency. If it be true that a policeman guilty of felony cannot be removed by the board until after his con-

viction and sentence in a court of justice, because of constitutional prevention, then some astute lawyer will speedily insist that a felon cannot be removed at all for crime, because the same constitutional safeguards provide that he shall not be twice tried or punished for the same offense."

The proceedings of the board of health should therefore be affirmed, and the writ of certiorari dismissed, with $50 costs and disbursements to respondent

INGRAHAM, P. J., and McLAUGHLIN, J., concur.

SCOTT, J. This is a proceeding by certiorari to review the determination of the board of health in removing the relator from the position of assistant registrar of records in the department of health. The relator is a veteran volunteer fireman, and therefore subject to removal only "for incompetency or misconduct shown after a hearing upon stated charges." Civil Service Law, § 22. There is no charge of incompetency. The relator is a physician, who has held the position from which he has now been removed since 1898. During this 13 years of service no charge of any kind, other than those now under consideration, has been made against him. Prior to the creation of the present city of New York, on January 1, 1898, he had been health officer of the village of Port Richmond, and also the town of Northfield, in Richmond county; his total public service exceeding 20 years.

The charges upon which he has been removed have no relation to any dereliction in the performance of his public duties, but relate exclusively to alleged improper actions towards private patients. The most serious charge was to the effect that on August 3, 1909, at his office in the borough of Richmond, the relator, having been consulted professionally by a woman patient named De Camera, "under a pretence of treating her professionally, grossly and indecently, by subterfuge, force, and against her will, committed an outrageous assault upon the said Mrs. De Camera." While this charge might cover almost any kind of an assault, the evidence of Mrs. De Camera makes it clear that the real charge against the relator, and that upon which he was tried, was that he committed upon her the crime of rape. Indeed, she expressly and in terms so alleges. If he did not commit rape, if he did not commit the act of which she complains, or if he committed it with her consent and acquiescence, the charge against him was not proven. It appeared that the relator had been indicted for rape, based upon the same alleged assault upon Mrs. De Camera, and had been tried in the Supreme Court and acquitted in October, 1909, so that the action of respondents in finding relator guilty upon the same charge was, in effect, a reversal of the judgment of the Supreme Court.

There is high authority for saying that the same acts constituting a crime against the people cannot, after the acquittal of the accused in a court of competent jurisdiction, be made the basis of a second trial of the accused for that crime in the same or any other court within the same jurisdiction. Grafton v. United States, 206 U. S. 333, 27 Sup. Ct. 749, 51 L. Ed. 1084. I should not be willing to go to the length of saying that an acquittal upon a criminal charge would absolutely bar the removal of the accused from office upon a charge based upon

the same facts, because in the one case guilt must be shown beyond a reasonable doubt, and in the other merely by a fair preponderance of the evidence. But I am of the opinion that acquittal upon a criminal charge, in a case like the present, is entitled to great weight as creating a strong presumption of innocence on the part of the accused when it is sought to remove him from office for the same offense.

Quite apart from the record of his acquittal, the evidence in the case in my opinion is wholly insufficient to justify the finding of the respondents which not only removed the relator from office, but, what is much more serious, brands him with the indelible stain of having been guilty of infamously unprofessional conduct. The charge made against relator by Mrs. De Camera is one to which physicians, from the very nature of their relations to their patients, are peculiarly open. It is one easily made, and not always easily rebutted, if those who try it are content to rest their finding upon the uncorroborated evidence of the accuser, a result which the law wisely forbids in a criminal prosecution. Section 2013, Penal Law.

In the present case, not only was the complainant wholly uncorroborated, and directly contradicted by the relator, but her evidence was rendered most improbable by the testimony of other witnesses, who were unimpeached, and two of whom were apparently disinterested. In my opinion, no professional man would be safe from the attacks of any vindictive and mendacious foe, if he could be convicted upon such evidence as a majority of the board of health accepted as sufficient in the present case.

The other charges upon which the defendant was found guilty were trivial and stale. They related to familiarity said to have been had with female patients nearly 10 years before the trial, and of which the persons aggrieved had never, apparently, complained to any one. The witnesses to these charges were uncorroborated, and the charges were categorically denied by the relator. It was made apparent on the trial that these minor charges had been included merely as makeweights for the principal charge, and that they had been instigated by the De Camera woman. Under all the circumstances, and in view of all the facts, I do not think that the action of the board of health should be sustained.

In my opinion, therefore, the action of the board should be annulled, and the relator reinstated, with $50 costs and disbursements.

MILLER, J., concurs.